Jacob Markowitz, J.
Petitioner, New York Mailers’ Union Number Six, hereinafter referred to as “ Mailers ”, moves to compel respondents, the New York Times Company and Publishers’ Association of New York City, to proceed to arbitration of a dispute, pursuant to a written collective bargaining agreement between the parties. The dispute relates to the refusal of the Times to permit petitioner’s members to do certain work which had been assigned to them the previous day. The Times cross-moves to dismiss the petition for arbitration on the ground that the National Labor Relations Board possesses exclusive jurisdiction of the controversy between the parties.
On October 16,1961 the Times assigned certain work to petitioner union, whereupon the Newspaper and Mail Deliverers Union of New York and Vicinity, hereinafter referred to as *61 “ Drivers ”, threatened and actually ordered a work stoppage of its members. On October 17, the Times, because of a change in the instructions of its customer as to the place of delivery of the printed matter, assigned the work to “ Drivers ”. Thereupon, petitioner ordered a work stoppage of its members. Faced with a strike by whichever union did not receive an assignment of the work in question, the Times, on October 19, filed an unfair labor practice charge against both unions with the National Labor Relations Board, pursuant to subdivision (1) of section 10 of the National Labor Relations Act. The Times’ petition charged violations by both unions of section 8 (subd. [b], par. [4], cl. [i] and cl. [ii], subcl. [D]) of the act, which makes it an unfair labor practice for a union to induce a strike in order to compel an employer to assign work to employees represented by it rather than to employees represented by another union, unless the employer’s assignment of the work violates an order or certification of the board determining the bargaining representative for employees doing such work. The board conducted a preliminary investigation, as the result of which it applied for and has obtained temporary injunctive relief against the unions in the Federal court. The board was scheduled to proceed with a hearing on November 15.
The present proceeding to compel arbitration was not commenced until November 3, returnable November 13.
In January of this year, the United States Supreme Court, in Labor Bd. v. Radio Engineers (364 U. S. 573) held that subdivision (k) of section 10 of the National Labor Relations Act made it compulsory for the board, where an unfair labor practice is charged under section 8 (subd. [b], par. [4], cl. [D]) of the act, to decide which of the rival unions is entitled to- do the work which forms the basis of the controversy between them (pp. 579, 580). The court disapproved of the board’s policy of making its decisions solely on the basis of prior certifications or orders of the board or the terms of collective bargaining agreements (p. 579): “ This language also indicates a congressional purpose to have the Board do something more than merely look at prior Board orders and certifications or a collective bargaining contract to determine whether one or the other union has a clearly defined statutory or contractual right to have the employees it represents perform certain work tasks ”. The court rejected the board’s claim that this was not a proper interpretation of subdivision (k) of section 10, saying, inter alia (p. 582): “ But here, as in most situations where jurisdictional strikes occur, the employer has contracted with two unions, both of which represent employees capable of doing *62 the particular tasks involved. The result is that the employer has been placed in a situation where he finds it impossible to secure the benefits of stability from either of these contracts, not because he refuses to satisfy the unions, but because the situation is such that he cannot satisfy them ”. The fact that the court’s interpretation of subdivision (k) of section 10 forced the board (p. 583) “to exercise under § 10(k) powers which are broad and lacking in rigid standards to govern their application ” was held to be immaterial, the court pointing out that the board’s long experience in hearing and disposing of similar labor problems, and its ‘ ‘ knowledge of the standards generally used by arbitrators, unions, employers, joint boards and others ’ ’ would enable it to perform the duty, mandated upon it by subdivision (k) of section 10, to decide affirmatively which union was entitled to the work in question.
It is clear from this decision that the board possesses the sole and exclusive jurisdiction to decide which of the rival unions is entitled to an assignment of the work forming the basis of the controversy between them, and that the provisions of the collective bargaining agreements with the unions, though among the factors to be considered by the board, are not conclusive upon it and may be disregarded by it. It must follow that even if arbitration were ordered, pursuant to the collective bargaining agreement, any award made by the arbitrators would not be binding upon the board, which alone has the jurisdiction to decide which union is entitled to the work. Permitting arbitration to proceed would undoubtedly lead, in many cases, to an award requiring an employer to assign work to one union, only to have the board direct that the work be assigned to a rival union. The very object of subdivision (k) of section 10 was to put an end, in the interest of industrial peace, to inconsistencies of this nature, and to free employers from the dilemma posed by conflicting claims, only one of which the employer can satisfy. Only the board, not an arbitrator, has the right and power to decide the dispute.
No case decided subsequent to the decision in Labor Bd. v. Radio Engineers (supra) is cited by petitioner which calls for a conclusion that this court may direct arbitration after the National Labor Relations Board has been vested with sole and exclusive, as well as mandatory, jurisdiction to hear and determine the dispute sought to be arbitrated, viz.: petitioner’s right to be assigned work which is claimed by a rival union. In Freight Drivers Union v. Quinn Freight Lines (195 F. Supp. 180) it does not appear that any work stoppage was threatened or that the employer invoked the jurisdiction of the National *63 Labor Relations Board claiming a violation of section 8 (snbd. [b], par. [4], cl. [D]) of the act. The decision in Labor Bd. v. Radio Engineers (supra) is not even mentioned in the court’s opinion.
Petitioner’s counsel maintains that a determination by the board under subdivision (k) of section 10 (supra) is not binding on the employer, citing an article in the December, 1960 issue of the Stanford University Law Review. No decision of the courts or of the board to that effect is cited in the article. The article preceded the United States Supreme Court decision heretofore discussed. Assuming that there is no express provision in the act for strictly legal enforcement of the determination against the employer, it is, nevertheless, obvious that the practical effect of the determination is to bind the employer, for if the latter assigns the work to a union other than the one which the board determines to be the one entitled to the work, the employer will be faced with a strike by the latter and will have gained no relief from having resorted to the board. Furthermore, there can be no question but that the determination will be binding upon both unions. The United States Supreme Court, in the case of Labor Bd. v. Radio Engineers (supra) upheld the contention of the respondent union <£ That the Board’s duty was to make a final determination, binding on both unions ” (p. 578) as to which of them was entitled to the work. The court said (p. 582): ££ Thus it is the employer here, probably more than anyone else, who has been and will be damaged by a failure of the Board to make the binding decision that the employer has not been able to make ”.
Regardless, however, of whether the act provides a means of enforcing the determination against the employer, the exclusive and mandatory jurisdiction vested in the board to determine which of the rival unions is entitled to the work in dispute preempts this court from directing an arbitration as to petitioner union’s claimed right to have work assigned to it (San Diego Unions v. Garmon, 359 U. S. 236, 241, 242), which a rival union claims properly belongs to itself and not to petitioner.
It is to be borne in mind that were it not for the availability of the National Labor Relations Board as the forum to decide the dispute between the rival unions, it is possible that separate arbitrations might proceed before separate arbitrators under the collective bargaining agreements with the respective rival unions, resulting in diametrically opposite awards as to which union is entitled to do the work, with the result that the employer would have the impossible task of complying with each of the inconsistent awards. The employer would then be faced with substantially the same problem as now faces it. *64 Unless an arbitration binding on both unions were agreed to, there would be only greater industrial strife.
On the argument of the motion, this court, in its desire to expedite determination of the controversy, suggested the possibility of an arbitration between respondents and both unions, by which all parties would be bound. It developed, however, that while the “ Drivers ” union and both respondents were amenable to the court’s suggestion, petitioner union declined, apparently because the laws of its parent union prohibit its participation in an arbitration to which a rival union is a party.
In view of the conclusion reached, that sole jurisdiction is in the National Labor Relations Board, and petitioner’s refusal to participate in an arbitration binding upon both rival unions, the motion to compel arbitration with respondents is denied and the cross motion to dismiss the petition granted.
It is accordingly unnecessary to consider respondent’s contention that there has been no demand, as required by the collective bargaining agreement, that the dispute be heard by the Joint Standing Committee.